UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL RIVERA-HERRERA,<br><br>     Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>     Defendant. | No. 1:20-cv-01326-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 19)** |

**I.     Introduction**

Plaintiff Miguel Rivera-Herrera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19, 20, 21. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.     Factual and Procedural Background[2]**

On September 30, 2016 Plaintiff applied for benefits alleging disability as of August 15, 2016 due to diabetes, vision loss, hearing loss, shaking and high cholesterol. AR 303–314, 408. The Commissioner denied the applications initially on March 30, 2017 and on reconsideration on September 6, 2017. AR 139–43, 146–50.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 9.
[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

"ALJ") on August 27, 2019.  AR 39–77.  On September 18, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 15–38.  The Appeals Council denied review on July 15, 2020.  AR 1–8.  On September 16, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.     The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 15, 2016. AR 23. At step two the ALJ found that Plaintiff had the following severe impairments: type II diabetes mellitus. AR 24. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: unspecified vision loss, essential tremor, hyperlipidemia, and bilateral hearing loss. AR 24. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). AR 26–30. At step four the ALJ concluded that, considering his RFC, Plaintiff could perform his past relevant work as a combination Fruit Farm Worker II and Harvest Worker. AR 30. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his alleged disability onset date of August 15, 2016. AR 31.

## V. Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ improperly rejected the medical evidence from the examining physician, Dr. Wagner, and 2) that the Commissioner's decision arose from an unconstitutional administrative process.

### A. Dr. Wagner's Opinion

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

On October 15, 2018 Dr. Wagner performed a consultative physical examination of Plaintiff at the request of the Agency. AR 634–45. Dr. Wagner identified diagnosis of diabetes, left knee pain, hearing loss and tremor. AR 638. He opined, in relevant part, that Plaintiff was limited to occasional climbing of ladders and scaffolds. AR 639. Plaintiff's ability to climb ladders and scaffolds is outcome determinative here given the VE's testimony that Plaintiff's past work as a Fruit Farm Worker II and Harvest Worker would be precluded if climbing was limited to occasional. AR 73–75.

The ALJ gave Dr. Wagner's opinion little weight, explaining as follows:

> Little weight is given to the opinion of consultative examiner Roger Wagner, M.D. (Exhibit 10F/5-6). Dr. Wagner's opinion was based upon two medical signs: a bit of bony abnormality of the left patella and hearing loss. However, as has been addressed above, those findings are not indicative of the claimant's typical ability to function. First, the claimant does not have a medically determinable knee impairment, and the vast majority of physical examinations failed to reproduce the findings observed by Dr. Wagner or otherwise elicit any abnormalities related to the claimant's knees. (Exhibits 5F/8, 12, 15, 18-19; 7F/8, 12, 15, 24, 28; 11F/10-11; 12F/3, 13-14; 13F/4-5, 11, 25, 30-31, 40, 46-47, 59, 64, 67, 74, 82). Similarly, although the claimant has some hearing loss, the condition is sufficiently corrected with hearing aids that he has not presented with any discernible hearing impairment during routine treatment sessions. (Exhibits 5F/7, 13, 15, 19; 7F/7, 11, 15; 13F/2, 10, 14, 24, 30, 38, 46, 48, 53, 58, 63, 66-67, 73, 81). Because his opinion is inconsistent with the weight of the evidence, I give it little weight.

AR 30. Earlier in her decision, the ALJ also explained her reasoning for declining to find any work-related limitations attributable to Plaintiff's vision loss, hyperlipidemia, tremors, and diabetes. As to Plaintiff's vision loss, the ALJ found it non-severe because he had no discernable vision problems during face-to-face interviews with disability claims specialists, and his treatment records noted that he has no vision impairment. AR 24 (citing Exhibits 5F/7, 13, 15, 19; 7F/7, 11, 15; 13F/2, 10, 14, 24, 30, 38, 46, 48, 53, 58, 63, 66-67, 73, 81).

As to hyperlipidemia, the ALJ explained that it is has not resulted in any complications such as heart disease, but that the condition is controlled with oral medication.[3] AR 24. As to Plaintiff's tremors, the ALJ noted the lack of documentation of the impairment and that Plaintiff was able to perform his past relevant work for decades despite reportedly suffering from tremors since age 15.

---

[3] Notably, this appears to be the only conclusion unsupported by any citations to the record. Accordingly, the Court cannot confirm or disconfirm the accuracy of the ALJ's conclusion regarding Plaintiff's hyperlipidemia. To the extent the ALJ erred in concluding that Plaintiff's hyperlipidemia was well controlled with medication, however, the Court finds the error harmless as Plaintiff does not contend that his hyperlipidemia affected his capacity to climb or perform any other work-related functions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.").

AR 24, 28 (citing Exhibits 5F/8, 12, 15, 18-19; 7F/8, 12, 15, 24, 28; 11F/10-11; 12F/3, 13-14; 13F/4-5, 11, 25, 30-31, 40, 46-47, 59, 64, 67, 74, 82).

Finally, as to Plaintiff's diabetes, the ALJ explained as follows: 1) that Plaintiff's diabetes was controlled with oral medications, 2) that he had not yet required the use of insulin, 3) that his condition was uncomplicated despite somewhat elevated blood glucose, 4) that the record documents no acute complications, and 4) that examinations had consistently yielded normal findings. AR 28–30 (citing Exhibits 5F/8, 12, 15, 18-19; 7F/8, 12, 15, 24, 28; 11F/10-11; 12F/3, 13-14; 13F/4-5, 11, 25, 30-31, 40, 46-47, 59, 64, 67, 74, 82).

In sum, as quoted above, ALJ provided specific and legitimate reasons (supported by extensive citations to the record) for rejecting the limitations contained in Dr. Wagner's opinion related to knee pain and hearing loss, namely: 1) that the records demonstrate no medically determinable knee impairment as the vast majority of physical examinations neither corroborated Dr. Wagner's examination finding, nor elicited any knee abnormalities; and 2) that Plaintiff's hearing loss was sufficiently treated with hearing aids and he demonstrated no discernable hearing impairment during routine treatment sessions. AR 30.

Thus, lack of corroboration in the medical evidence is a specific and legitimate reason to reject an examining opinion. *See* 20 C.F.R. § 404.1527(c)(4); *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Further, as summarized above, separate from her discussion of Dr. Wagner's opinion the ALJ provided independent reasoning for finding that Plaintiff's remaining impairments (both severe and non-severe) did not preclude him from performing a full range of medium exertional work, reasoning which was equally applicable to the ALJ's rejection of Dr. Wagner's contrary opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's

opinion. It is proper for us to read the paragraph discussing Dr. Pont's findings and opinion, and draw inferences relevant to Dr. Fox's findings and opinion, if those inferences are there to be drawn."). The ALJ's rejection of Dr. Wagner's opinion was supported by specific and legitimate reasons, and her broader reasoning in support of the RFC was supported by substantial evidence.

Plaintiff's argument consists only of a statement of the applicable law, a recitation of Dr. Wagner's opinion, and a brief assertion that the ALJ's rejection of the same was insufficiently specific. Plaintiff does not acknowledge or dispute the specifics quoted above from the ALJ's decision, the accuracy of the ALJ's recitation of the medical records, or the reasonableness of inferences the ALJ derived therefrom. Plaintiff made no attempt to identify countervailing clinical evidence that would support the dispositive limitation of occasional climbing, or for that matter any other work-related limitations attributable to his hyperlipidemia, diabetes, hearing loss, vision loss, left patella bony abnormality, or tremors.

Plaintiff's discussion falls short of his burden on appeal. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted); *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").

### B.     **Constitutional Challenges**

Former Commissioner Andrew Saul was appointed to a six-year term pursuant to 42 U.S.C. § 902(a)(3) which provides for removal only for cause, whereas former Acting Commissioner Nancy Berryhill held office under subsection § 902(b)(4) which provides no such removal

protection.

The parties' briefing involves two related but subtly distinct constitutional issues, one regarding the constitutionality of the ALJ's *appointment* by then Acting Commissioner Berryhill (who enjoyed no removal protection), and another regarding the constitutionality of the ALJ's *exercise of authority over Plaintiff's claim* during the tenure of Commissioner Andrew Saul (who did enjoy removal protection).

### 1.     The ALJ's Appointment by Acting Commissioner Berryhill

In *Lucia*, the Supreme Court found that Security Exchange Commission (SEC) ALJs are "inferior officers" under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and therefore must be appointed by the President, a court, or the head of the agency, rather than lower-level staff. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018).  Although *Lucia* did not address appointment of Social Security ALJs, on July 16, 2018 the acting Commissioner of the SSA, Nancy Berryhill, responded to the ruling by ratifying the appointments of ALJs and administrative appeals judges (who were previously appointed by lower-level staff, rather than the Commissioner herself) to address any prospective Appointments Clause concerns.  *See* SSR 19-1p, 84 Fed. Reg. 9582, 9583 (2019).

The following year the SSA issued a ruling stating that the Appeals Council should, in response to timely requests for Appeals Council review, vacate ALJ decisions predating acting Commissioner Berryhill's July 16, 2018 ratification and provide fresh review by a properly appointed ALJ.  *Ibid.*  That remedy was only available, however, to claimants who had raised an Appointments Clause challenge in either their ALJ or Appeals Council proceedings.  *Ibid.*  Claimants who had not objected to the ALJs' appointments in their administrative proceedings would receive no relief.  *See ibid.*

The U.S. Courts of Appeals for the Eighth and Tenth Circuits adopted the Commissioner's

position on forfeiture of Appointments Clause claims. In those Circuits' view, petitioners could not obtain judicial review of their Appointments Clause claims if they had not raised those challenges in their administrative proceedings. *See Davis v. Saul*, 963 F.3d 790, 792 (8th Cir. 2020); *Carr v. Comm'r of Soc. Sec.*, 961 F.3d 1267, 1268 (10th Cir. 2020). The Third, Fourth, and Sixth Circuits ruled contrarily. In those Circuits, claimants could challenge the constitutionality of an SSA ALJ's appointment for the first time in federal court. *See Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3rd Cir. 2020); *Probst v. Saul*, 980 F.3d 1015, 1020 (4th Cir. 2020); *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 546 (6th Cir. 2020).

Although the Ninth Circuit never weighed in on the issue, this Court took the view of the Eighth and Tenth Circuits and held that such a challenge had to be preserved at the administrative level. *See, e.g.*, *McElfresh v. Comm'r of Soc. Sec.*, No. 1:19-CV-0823 JLT, 2020 WL 5604274, at *1 (E.D. Cal. Sept. 18, 2020); *Erb v. Saul,* No. 1:18-CV-01398-GSA, 2019 WL 6683134, at *11 (E.D. Cal. Dec. 6, 2019); *Byrd v. Berryhill*, No. 1:17-cv-01619-SKO, 2019 WL 95461 at * 6, n. 10 (E.D. Cal. Jan. 03, 2019).

On April 22, 2021, the U.S. Supreme Court resolved the circuit split regarding forfeiture of an Appointments Clause challenge. The Court held that affected persons may challenge any decisions reached by ALJs not constitutionally appointed at the time of the decision, and they do not forfeit Appointments Clause challenges by presenting them for the first time before a federal court. *Carr v. Saul*, 593 U.S. ––––, ––––, 141 S. Ct. 1352, 1362 (2021).

Here, although the claim is properly raised for the first time in federal court, the ALJ who adjudicated Plaintiff's claim on September 18, 2019 was properly appointed pursuant to former Acting Commissioner Berryhill's July 16, 2018 ratification of ALJ appointments. As such, there is no Appointments Clause violation. *See Lisa Y. v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Marrs v. Comm'r of Soc. Sec.*, No. 4:20-CV-

00822-BP, 2021 WL 4552254, at *4 (N.D. Tex. Oct. 5, 2021); *Evans v. Kijakazi*, No. 1:20-CV-1148, 2021 WL 4502241, at *11 (M.D. Pa. Oct. 1, 2021); *Thompson v. Kijakazi*, 2021 WL 4236604, at *2 (E.D. Ky., 2021).

Indeed, Plaintiff acknowledges as much in his reply brief despite seemingly taking a different position in his opening brief. In Plaintiff's opening brief he states as follows: "[t]he question before this Court is whether the *improper appointment of the ALJ* tainted administrative proceedings below and mandates remand? It does." Br. at 11, Doc. 19 (emphasis added). In his reply brief, however, Plaintiff explicitly concedes that point: "Rivera-Herrera concedes that ALJ Coulter[4] was *properly appointed by the Acting or Deputy Commissioner Berryhill.*" Reply at 4 (emphasis added) (citing Social Security Ruling 19-1).

**2.  ALJ Exercising Authority During Commissioner Saul's Tenure**

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3). Under § 902(a)(3), the Commissioner is appointed to a six-year term and may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.*

On June 29, 2020 the U.S. Supreme Court held in *Seilia Law* that for-cause restriction of the President's executive power to remove the CFPB's single director violated the separation of powers doctrine, but that the removal-protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act was severable. *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) (holding removal clause of 12 U.S.C. § 5491(c)(3) unconstitutional).

On June 23, 2021 the U.S. Supreme Court held in *Collins* that the FHFA director's statutory for-cause removal protection was similarly unconstitutional, finding *Seila Law* "all but dispositive," but holding that agency actions during the director's tenure were not void though the possibility of

---

[4] Plaintiff's multiple references to ALJ "Coulter" may relate to a prior application from 2012 which is not before the Court. The ALJ who issued the decision at issue dated September 18, 2019 was ALJ Boorady.

compensable harm could not be ruled out. *Collins v. Yellen*, 141 S. Ct. 1761 (2021)

Here, notwithstanding the propriety of the ALJ's appointment by former acting Commissioner Berryhill (as addressed above), Plaintiff contends he nevertheless suffered a constitutional violation because: 1) the ALJ subsequently exercised authority over Plaintiff's claim during the tenure of Commissioner Saul; 2) that the tenure of Commissioner Saul was unconstitutional as he was appointed to a six-year term and dischargeable only for cause under 42 U.S.C. § 902(a)(3); 3) that President Biden delayed firing Commissioner Saul until the Office of Legal Counsel issued an opinion casting doubt on the constitutionality of Commissioner Saul's tenure protection in light of *Seilia Law* and *Collins*; 4) that President Biden's delay in firing Commissioner Saul until the issuance of the OLC opinion suggests that he believed he could not remove Commissioner Saul; 5) that Commissioner Saul lacked proper accountability and, by extension, so did the ALJ's who held office during his tenure; 6) that, in the words of President Biden, Commissioner Saul undermined and politicized Social Security Disability benefits during his tenure; and 7) that the ALJ's exercise of authority over Plaintiff's claim under the auspices of Commissioner Saul's unconstitutional tenure therefore subjected Plaintiff to constitutional harm warranting remand for a new decision. Reply at 3–10.

Defendant responds that Plaintiff cannot show a nexus between section 902(a)(3)'s removal provision and any alleged harm. Defendant also argues that the rehearing request should be denied under the harmless error doctrine, the de factor officer doctrine, the rule of necessity, and broad prudential considerations given the size of the agency and the number of claims that could be affected.

In light of *Seila Law* and *Collins*, on November 8, 2021 a district court held in *Lisa* that the removal clause of 42 U.S.C. § 902(a)(3) did indeed violate the separation of powers doctrine insofar as it granted for-cause removal protection to the Commissioner of Social Security. *Lisa Y. v.*

*Comm'r of Soc. Sec.*, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021). The court found, however, that "there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner," and that § 902(a)(3)'s removal clause therefore did not harm Plaintiff. *Id.*

Similarly here, Plaintiff identifies no harm suffered by virtue of his claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed by Commissioner Saul's predecessor, Acting Commissioner Berryhill. Rather, Plaintiff quotes President Biden's reasoning for firing Commissioner Saul, namely that he undermined and politicized disability benefits, terminated telework policies, harmed the SSA's relationship with relevant federal employee unions in the context of Covid-19 workplace safety planning, and most notably "*reduced due process protections for benefits appeals hearings . . .*" Reply at 6 (emphasis added) (*quoting* Washington Post, "Biden fires head of Social Security Administration, a Trump holdover who drew the ire of Democrats," (WAPO, July 11, 2021) available at https://www.washingtonpost.com/politics/andrew-saul-social-security-/2021/07/09/c18a34fa-df99-11eb-a501-0e69b5d012e5_story.html.).

In an interesting footnote, Plaintiff contends that, "under the presumption of administrative regularity," President Biden's statements concerning Commissioner Saul's due process reductions must be presumed true by this Court because, if they were not true, "the President would have defamed Mr. Saul," which "would be tortious" and "not administratively regular." *Id.* Plaintiff contends that this legal principal ("the presumption of administrative regularity") was established in 1926 by the Supreme Court. *Id.* (citing *United States v. Chem. Found.*, 272 U.S. 1, 14, 47 S. Ct. 1, 6, 71 L. Ed. 131 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have

13

properly discharged their official duties.").

In short, Plaintiff contends that President Biden's statement that Commissioner Saul "reduced due process protections for benefits appeals hearings," invalidates all ALJ decisions issued under Commissioner Saul's tenure and entitles such claimants to a new hearing. Respectfully, given the lack of any controlling or persuasive authority to that effect, the Court will defer to the holdings of the only district courts in this Circuit who have spoken on the issue and found that such claims fail for lack of standing because the denial of disability benefits is not a harm fairly traceable to § 902(a)(3)'s removal provision. *See Lisa,* 2021 WL 5177363, at *8 ("Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff."); *Catherine J.S.W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-05602-TLF, 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434-BR, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) ("Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing."); *Brinkman v. Kijakazi*, No. 2:21-CV-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("In this case, unlike *Seila Law*, Plaintiff does not allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner.").

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, Commissioner of Social Security, and against Plaintiff Miguel Rivera-Herrera.

IT IS SO ORDERED.

Dated: __**November 21, 2021**__                    __**/s/ Gary S. Austin**__
                                             UNITED STATES MAGISTRATE JUDGE